UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In Re:                                          Chapter 11

                                                                                 Case No. 02-21821-cec
SUDANO, INC., *et al.,*          Case No. 02-22350-cec
                                                                                 Case No. 02-22714-cec


                              Debtor.
-------------------------------------------------------------X


DECISION DENYING MOTION TO RECONSIDER ORDER DENYING MOTION TO
RENEW OBJECTION TO TRUSTEE'S FINAL REPORT

CARLA E. CRAIG
Chief United States Bankruptcy Judge

This matter comes before the Court on the motion to reconsider the Court's July 23, 2018 Order overruling an objection to the Trustee's Motion for the Entry of a Final Decree in these Chapter 11 Cases and denying a motion to renew objections to the Trustee's Final Report ("Second Motion to Reconsider"), filed by Sebastian Bongiovanni Jr. ("Bongiovanni Jr.").

For the reasons set forth below, the Second Motion to Reconsider is denied.

## JURISDICTION

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 1334(a), 157(a) and 157(b)(1). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## FACTS

Sudano, Inc., Sortino Realty Corporation, and Couva Associates Ltd. (collectively the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Cases") on September 18, 2002 (Case No. 1-02-21821-CEC); September 30, 2002 (Case No. 1-02-22350-CEC) and October 8, 2002 (Case No. 1-02-22714-CEC) respectively. The Debtors owned three residential properties in Brooklyn (the "Properties"), and Sebastian Bongiovanni Sr. ("Bongiovanni Sr.") was listed as the sole equity holder for each Debtor.

Upon the Debtors' motion, the cases were jointly administered pursuant to an order dated January 8, 2003. (ECF No. 20).[1] On March 1, 2004, the United States Trustee filed a motion to appoint a chapter 11 trustee (ECF No. 77), which was granted by order dated March 3, 2004 (ECF No. 78). Janice Grubin was thereafter appointed Chapter 11 Trustee (the "Trustee") on

---

[1] All references to "ECF No." are to documents, identified by docket entry number, in the lead case Case No. 02-21821-CEC, unless otherwise indicated.

March 10, 2004 (ECF No. 82). The Trustee filed monthly operating reports from January, 2004 until July, 2005.

The Debtors' Joint Plan of Liquidation (the "Liquidation Plan" or "Plan") (ECF No. 185) filed by the Trustee was confirmed by order dated August 17, 2005 (the "Confirmation Order") (ECF No. 206), under which the Debtors were dissolved and all equity interests in the Debtors were "deemed cancelled, terminated and extinguished" as of August 30, 2005, the effective date of the Liquidation Plan. There were five classes of claims under the Plan: Priority Non-Tax Claims (Class I), Secured Claims (Class II), General Unsecured Claims (Class III), Fine/Penalty Claims (Class IV) and Interests (Class V). Classes III through IV were impaired under the plan. As it was anticipated that there would be insufficient funds to pay all creditors in full, the Plan provided that general unsecured claims (Class III) would be paid in cash *pro rata*, and that the holders of equity interests would receive no distribution, other than the release provided for therein. (ECF No. 185, at 9-11). The Liquidation Plan also established an operating and tax reserve (in the amount of $250,000) to pay for post-confirmation taxes, fees and expenses. (ECF No. 185, at 13; ECF No. 316, at 6; ECF No. 317, at 6). No creditor or party in interest appealed the Confirmation Order. Upon confirmation, the Trustee ceased filing monthly operating reports and began to file monthly post-confirmation disbursement reports, commencing August, 2005.[2] See, e.g., ECF. No. 274. Bongiovanni Sr. died in July, 2006.

On November 27, 2007, the Trustee filed a motion for approval of the final report and for entry of a final decree (the "Trustee's Motion for Approval") (ECF No. 316), together with the final report (the "Final Report") (ECF No. 317). The Trustee reported the receipt of $13,100,000

---

[2] The United States Trustee's guidelines requires that debtors file post-confirmation operating reports, which includes all payments made under the plan of reorganization and payments made in the ordinary course of business, until the court enters a final decree, dismisses or converts the case.

as proceeds from the sale of the Properties on June 16, 2005; retained funds totaling $4,167,579.52 as of the effective date of the Plan; distributions of $4,150,493.19 from the effective date through the date of the Final Report (including $545,458.74 to unsecured claims); and cash on hand of $219,431.97 (comprised of residual cash, interest income, insurance proceeds and tax refunds) which, along with any remaining funds in the Operating Reserve, would be deposited in a "Wind Up Reserve" to pay any wind-up costs and accompanying professional fees; any remaining balance would thereafter be deposited with the Clerk of the Court pursuant to 28 U.S.C. § 2041.  (ECF No. 317, at 3-6).  There was no objection to the Final Report from the United States Trustee.

On December 14, 2007, December 17, 2007, and January 28, 2008, Sebastian Bongiovanni, Jr. ("Bongiovanni Jr.") filed objections to the Trustee's Motion for Approval, asserting, among other things, that the Trustee failed to provide a proper accounting of the funds that were received and disbursed, and that the professional fees were unreasonable.  (ECF Nos. 320, 321, 337).  Bongiovanni Jr.'s objections to the Trustee's Final Report were withdrawn, and the Final Report, as later supplemented on January 28, 2008 (ECF No. 332), was approved by the Court pursuant to an agreed order dated February 7, 2008 (the "Order Approving Final Report") (ECF No. 341).

Since the entry of the Order Approving Final Report, Bongiovanni Jr. has filed numerous motions seeking directly or indirectly to challenge the Final Report.  On January 28, 2008, Bongiovanni Jr. filed a motion for damages from the Trustee (the "Damages Motion") on behalf of his mother, Mrs. Mildred Bongiovanni ("Mrs. Bongiovanni", and together with Bongiovanni Jr. the "Bongiovannis").  (ECF No. 336).  The motion claimed that Mrs. Bongiovanni held a 50% interest in the Debtors, and that her due process rights had been violated by the Trustee's

4

failure to provide sufficient notice during the course of the bankruptcy proceeding. The motion also alleged that the Trustee had prolonged the sale process of the Properties, which led to a diminished recovery for the estates and ultimately no recovery for the shareholders. The Damages Motion was denied by decision and order of the Court on July 30, 2008. (ECF 369, 370). The Court found that Mrs. Bongiovanni lacked standing to make the motion because all shares had been cancelled pursuant to the Liquidation Plan; that the Trustee provided adequate notice to interested parties throughout the bankruptcy process, and that there had been no violation of due process; and that no damages were warranted because the claims were speculative and conjectural. In re Sudano, Inc., 391 B.R. 678, 686-690 (Bankr. E.D.N.Y. 2008). Bongiovanni Jr. filed a motion to reconsider that ruling on August 8, 2008 (ECF No. 372), which was denied by order dated August 26, 2008 (ECF No. 387).

Mrs. Bongiovanni filed an appeal from the July 30, 2008 decision and order and the August 26, 2008 order denying reconsideration. On September 30, 2010, the District Court affirmed both orders of the Court, finding that even though Mrs. Bongiovanni had standing to assert due process violations, the motion was meritless; that there was no due process violation on the part of the Trustee, and that Mrs. Bongiovanni failed to show damages. Bongiovanni v. Grubin, No. 08-CV-3534(CBA), 2010 WL 3927042 (E.D.N.Y. Sept. 30, 2010), *aff'd*, 451 F. App'x 53, 54 (2d Cir. 2011). (ECF No. 408).

On October 25, 2012, the Bongiovannis filed a motion to renew the prior objections to the Final Report, and for leave to pursue civil damages against the Trustee in civil court for fraudulent filing of fee applications, misleading monthly operating reports, failure to reconcile sale proceeds and breach of fiduciary duties (the "First Motion to Renew"). (ECF No. 412). The court denied the motion on November 8, 2012 (ECF No. 415) stating that the First Motion to

5

Renew was time barred, that the motion failed to state any grounds for relief pursuant to Rule 60(b), and that the motion was barred by res judicata because the conduct giving rise to the claims within the motion was the subject of the Damages Motion, which was denied. The Bongiovannis filed an appeal on November 21, 2012, which was denied on September 26, 2013 on the basis that Mrs. Bongiovanni lacked standing to appeal because the Final Report was filed two years after all shares in the Debtors were cancelled pursuant to the Liquidation Plan. Bongiovanni v. Grubin, No. 12-CV-6387 (CBA), 2013 WL 5437330, at *5 (E.D.N.Y. Sept. 27, 2013). (ECF No. 441).

Bongiovanni Jr. also filed a motion to compel the Trustee to file a final account and for sanctions against the Trustee on August 13, 2013, asserting once again that the Trustee had failed to properly account for receipts and disbursements (the "First Motion to Compel") (ECF No. 437), which was denied on October 22, 2013 on the same basis as the denial of the First Motion to Renew (ECF No. 445). Bongiovanni Jr. refiled a motion to compel the Trustee to file a final account and again requesting sanctions on November 4, 2013 (ECF No. 446), which was denied on January 15, 2014 (ECF No. 449) on the same grounds as the denial of the First Motion to Renew and First Motion to Compel (no grounds for reconsideration pursuant to Rule 60(b) were shown, and any claims for sanctions against the Trustee were barred by res judicata as they were already addressed in the Damages Motion). This order was also appealed, but the appeal was dismissed for lack of jurisdiction on May 23, 2014. Bongiovanni v. Grubin, No. 14-CV1981 (CBA) (E.D.N.Y. 2014) (notice of appeal was untimely filed). (ECF No. 464).

Next, Bongiovanni Jr. filed a motion to determine that the Trustee made unauthorized post-petition payments, and for an order directing disgorgement of the unauthorized payments (ECF No. 465), which was denied once again on August 13, 2014 based on a finding that there were no

6

grounds to grant the motion under Rule 60(b), and that the motion seeking sanctions was barred by res judicata (ECF No. 477).

Bongiovanni Jr. then filed a motion to compel and seeking turnover of bank statements on January 30, 2015 (ECF No. 480), which was denied on April 20, 2015 (ECF No. 489), and the subsequent appeal was denied on July 27, 2016 on the basis that Bongiovanni Jr. lacked standing to appeal because he "did not suffer a direct, financial injury from the Bankruptcy Court's April 20, 2015 order" given that "[a]ny financial interest Bongiovanni Jr. had on behalf of Bongiovanni Sr.'s estate was extinguished when the Liquidation Plan went into effect on August 30, 2005." Bongiovanni v. Grubin, No. 15-CV-2617 (CBA), 2016 WL 4059349, at *4 (E.D.N.Y. July 28, 2016) ("Bongiovanni IV").  (ECF No. 504).

The Trustee filed a Motion for Final Decree and Order closing the Cases (the "Motion for Final Decree") on April 24, 2018.  (ECF No. 508).  The Motion for Final Decree included, in exhibits, letters by the Trustee to the Office of the United States Trustee, dated from April 4, 2013 to May 15, 2013, accompanied by exhibits thereto. (ECF No. 508, Ex. 3-5).  These letters were in response to the United States Trustee's request that the Trustee respond to allegations of misconduct made to the United States Trustee by Bongiovanni Jr. via email.  In these letters, the Trustee reports pre- and post-effective date receipts and disbursements and provides exhibits in support of these reports.  The Trustee's May 15, 2013 letter is accompanied by a Cash Receipt and Disbursement Summary which reports for the 2004-2005 period, total cash received in the amount of $15,757,384, disbursements in the amount of $15,512,426; and a cash balance of $244,958 as of the date of the Final Report.  The Trustee notes in the letter that the cash balance amount is $25,527 more than the amount reported in the Final Report, and characterizes this as a minor discrepancy in prior calculations.  (ECF No. 508, Ex. 5, Ex. 1).

7

Bongiovanni Jr. filed an objection to the Motion for Final Decree (the "Objection and Second Motion to Renew") on May 30, 2018, asserting that (1) he had standing to object to the Motion for Final Decree under 11 U.S.C. § 726(a)(6) and (2) seeking to "renew" the objection to the Final Report under Rule 60(b)(2) of the Federal Rules of Civil Procedure based on "newly discovered evidence." (ECF No. 513). Bongiovanni Jr. also filed a letter requesting a hearing on his Objection to the Motion for Final Decree on June 26, 2018. (ECF No. 514).

The Court overruled the objection on July 23, 2018, on the basis that (1) 11 U.S.C. § 726(a) which governs the order of priorities with respect to distribution of a chapter 7 estate is not applicable in Chapter 11 cases and does not confer standing on Bongiovanni Jr.; (2) there were no grounds for relief under Rule 60(b)(2) because the motion was time-barred; (3) the Objection challenges the Final Report, and was therefore precluded under the doctrine of res judicata by the Order Approving Final Report; and (4) the prior orders of the District Court which held that Bongiovanni Jr. lacked standing to object to the Final Report similarly precluded any consideration of the motion to renew the objection to the Final Report. The Court also granted the Trustee's Motion for Final Decree. (ECF No. 515). The Court entered a Chapter 11 Final Decree and Order Closing Substantively Consolidated Chapter 11 Cases (the "Final Decree Order") on August 1, 2018. (ECF No. 517).

Bongiovanni Jr. has now filed a motion to reconsider (the "Second Motion to Reconsider") the July 23, 2018 order overruling his objection to the Motion for Final Decree and his renewed objection to the Final Report on the basis that in determining that his renewed objection was time-barred and that he had no standing, the Court "misapplied the law…overlooked key evidence[,] and/or misinterpreted the underline [sic] litigation". (ECF No. 519). Bongiovanni Jr. asserts that he now has standing because, unlike in his prior motions, he

8

can now demonstrate that he has a pecuniary interest in this case, as the newly discovered evidence he identified in the Objection shows that there should have been a surplus (in excess of $400,000) available to shareholders after all the Trustee's distributions to creditors.

The newly discovered evidence which Bongiovanni Jr. contends was overlooked by the Court are the exhibits to the Trustee's Motion for Final Decree, in particular the Cash Receipt and Disbursement Summary attached to the Trustee's May 15, 2013 Letter at Exhibit 5 to the Motion for Final Decree. Bongiovanni Jr. claims that the Trustee never previously provided this summary of receipts and disbursements and that this constitutes newly discovered evidence to which he did not have access prior to the Trustee's Motion for Approval of the Final Report. He further argues that since he did not have access to this summary until the time of the filing of the Trustee's Motion for Final Decree, that his objections should not be time-barred.

## DISCUSSION

<u>Legal Standard under Rule 59(e) Motion</u>

Bongiovanni Jr. seeks reconsideration of the order granting the Trustee's Motion for Final Decree and overruling his renewed objection to the Final Report under Rule 59(e). He argues that (1) he has standing because the exhibits to the Trustee's Motion for Final Decree demonstrate the existence of funds that should be distributed to him, as the heir of the holder of equity interests in the Debtors; and (2) the Cash Receipt and Disbursement Summary for 2004-2005, attached as Exhibit 1 to Exhibit 5 of the Trustee's Motion for Final Decree constitutes "newly discovered evidence" which permit him to renew his objection to the Final Report which was approved ten years ago.

The Federal Rules of Civil Procedure (the "Rules") allow a litigant to seek reconsideration of a judgment or order under either Rule 59 or Rule 60, which are applicable in

bankruptcy cases pursuant to Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 9023 and 9024.  The burden of proof under each Rule is extremely high and relief is granted only upon a showing of extraordinary circumstances.

Bankruptcy Rule 9023, which incorporates Rule 59(e), provides for the alteration or amendment of a judgment within 14 days of the entry of that judgment.  Fed. R. Bankr. P. 9023. "A court may grant a Rule 59(e) motion only if the movant satisfies the heavy burden of demonstrating 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  Hollander v. Members of the Bd. of Regents of the Univ. of N.Y., 524 F. App'x 727, 729 (2d Cir. 2013) (citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992)).

> The standard for granting a motion for reconsideration pursuant to Rule 59(e) is strict, and reconsideration will generally be denied…such a motion is appropriate when the moving party can demonstrate that the court overlooked controlling decisions or factual matters that were put before it on the underlying motion…and which, had they been considered, might have reasonably altered the result before the court…Alternatively, the movant must demonstrate 'the need to correct a clear error or prevent manifest injustice.

Basciano v. Lindsay, No. 07-CV-421 (NGG) (RML), 2008 U.S. Dist. LEXIS 29070, at *5-6 (E.D.N.Y. Apr. 9, 2008) (citing McAnaney v. Astoria Financial Corp., No. 04-CV-1101 (JFB), 2008 U.S. Dist. LEXIS 5535, 2008 WL 222524, at *3 (E.D.N.Y. Jan. 25, 2008)).  See also Munafo v. Metro. Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004) ("Although Rule 59(e) does not provide the specific grounds for granting a motion to alter or amend a…final judgment…district courts may [do so] 'to correct a clear error of law or prevent manifest injustice'") (citing Collison v. International Chem. Workers Union, Local 217, 34 F.3d 233, 236 (4th Cir. 1994), quoting Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993); Dixon v.

Wallowa County, 336 F.3d 1013, 1022 (9th Cir. 2003); N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

This motion for reconsideration must be denied as the court overlooked no controlling decision or factual matters that were put before it; nor is reconsideration needed to correct a clear error or prevent manifest injustice. Bongiovanni Jr.'s arguments will be considered in turn.

A. Standing

It is clear that Bongiovanni Jr. lacks standing to make a motion to reconsider the Final Report. As the District Court held in Bongiovanni IV, "[a]ny financial interest Bongiovanni Jr. had on behalf of Bongiovanni Sr.'s estate was extinguished when the Liquidation Plan went into effect on August 30, 2005." Bongiovanni v. Grubin, 2016 WL 4059349, at 4. Therefore, at the time of the filing of the Final Report, no member of the Bongiovanni family had an interest in the Debtors' estates. It therefore follows that, since all of the shares of the Debtors were cancelled pursuant to the Liquidation Plan, neither Bongiovanni Sr. nor Bongiovanni Jr. as successor in interest would be entitled to receive any distribution, as the Liquidation Plan did not provide for any such distribution to equity interests. It provided instead that any surplus would fund an operating and tax reserve for post-confirmation expenses, and pursuant to the Final Report, any balance thereafter would be deposited with the Clerk of the Court pursuant to 28 U.S.C. § 2041. Bongiovanni Jr. therefore fails to assert a pecuniary interest which would confer him standing in this matter.

B. The Second Motion to Renew is time-barred (Rule 60(b)(2))

The Second Motion to Reconsider next asserts that the Second Motion to Renew was not time barred. Bongiovanni Jr. sought to renew his objection to the Final Report (i.e., to obtain reconsideration of the Order Approving the Final Report) under Rule 60(b)(2) based on the

11

"newly discovered evidence" discussed above. Rule 60(b)(2), which is incorporated in Bankruptcy Rule 9024, provides that a court may vacate an order or final judgment upon "newly discovered evidence that, with reasonable diligence, could not have been discovered in time for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2); Fed. R. Bankr. P. 9024.  A motion made under Rule 60(b)(2) must be made no more than a year after the entry of the order. Fed. R. Civ. P. 60(c)(1). "In order to succeed on a motion pursuant to Rule 60(b)(2), the movant must present evidence that is 'truly newly discovered or…could not have been found by due diligence.'" Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co., 609 F.3d 122, 131 (2d Cir. 2010) (citing United States v. Potamkin Cadillac Corp., 697 F.2d 491, 493 (2d Cir. 1983)).  Relief under Rule 60(b) is proper "only upon a showing of exceptional circumstances." Id.  The newly discovered evidence, as the term is construed under the rule, must have been in existence at the time of the order or final judgment. See Berry v. Dep't of Corr., No. 93 CIV.6448 BSJ, 2004 WL 287666, at *3 (S.D.N.Y. Feb. 11, 2004) (Newly discovered evidence is "evidence of facts in existence at the time of trial of which the party seeking a new trial was justifiably ignorant.") (citing Campbell v. Am. Foreign S.S. Corp., 116 F.2d 926, 928 (2d Cir. 1941).

Relief under Rule 60(b)(2) is not available to Bongiovanni Jr. to permit him to renew his objection to the Final Report for the obvious reason that it is time-barred. The motion was brought over 10 years after the approval of the Final Report.  Furthermore, the Court has no ability to grant this relief despite the time bar because Bankruptcy Rule 9006(b)(2) prohibits the enlargement of time for seeking reconsideration of an order or judgment under Bankruptcy Rules 9023 and 9024 (which incorporate Rules 59 and 60 respectively).  There was therefore no misapplication of law or error in the Court's determination that the Second Motion to Renew was time-barred.

Moreover, there is no newly discovered evidence in this matter. The Cash Receipt and Disbursement Summary to which Bongiovanni Jr. refers is attached to a letter dated May 15, 2013 sent by the Trustee to the Office of the United States Trustee, responding to inquiries by that office made in response to Bongiovanni Jr.'s complaints. This document constitutes a summary of deposits and disbursements reflected in the operating reports filed by the Trustee in 2004-2005, which were available to Bongiovanni Jr. at the time the Final Report was filed. If Bongiovanni Jr. believed that he needed more information about the Trustee's reported receipts and disbursements, he could have sought it in connection with the objections that he filed to the Final Report. Those objections were withdrawn, and the Final Report was approved by agreed order on February 7, 2008. (ECF No. 341). Any potential claim which Bongiovanni Jr. seeks to assert against the Trustee based on his objections were barred by the doctrine of res judicata upon the entry of the Order Approving Final Report.

C. The Final Decree Was Properly Entered

Bankruptcy Rule 3022 states that "after an estate is fully administered in a chapter 11 reorganization case, the court, on its own motion or on motion of a party in interest, shall enter a final decree closing the case." There is no definition for the term "fully administered" in the Bankruptcy Code or the Federal Rules of Bankruptcy. Courts have interpreted this term in a number of ways. For example, "[t]he Bankruptcy Court must ensure that no motions, contested matters or adversary proceedings remain to be decided." Ericson v. IDC Servs. (In re IDC Servs.), Chapter 11, Case No. 93 B 45992 (SMB) (Jointly Administered), 97 Civ. 3081 (TPG), 1998 U.S. Dist. LEXIS 13449, at *8 (S.D.N.Y. Aug. 27, 1998) (citing In Re Greenfield Drive Storage Park, 207 B.R. 913, 918 (9th Cir. BAP 1997); Matter of Wade, 991 F.2d 402, 407 n.2

(7th Cir. 1993)). Courts also rely on the 1991 Advisory Committee Note to Bankruptcy Rule 3022 which provides that:

> Factors that the court should consider in determining whether the estate has been fully administered include (1) whether the order confirming the plan has become final, (2) whether deposits required by the plan have been distributed, (3) whether the property proposed by the plan to be transferred has been transferred, (4) whether the debtor or successor of the debtor under the plan has assumed the business or the management of the property dealt with by the plan, (5) whether payments under the plan have commenced, and (6) whether all motions, contested matters, and adversary proceedings have been finally resolved.
>
> The court should not keep the case open only because of the possibility that the court's jurisdiction may be invoked in the future. A final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders and does not prevent the court from reopening the case for cause pursuant to § 350(b) if the Code....

Fed. R. Bankr. P. 3022 Advisory Committee Notes. See In re Gould, 437 B.R. 34, 37 (Bankr. D. Conn. 2010). Finally, some courts have looked to whether the plan has been substantially consummated under 11 U.S.C. § 1101(2).[3] Ericson v. IDC Servs., 1998 U.S. Dist. LEXIS 13449, at *9 (citing In re Walnut Assocs. v. Saidel, 164 B.R. 487 (E.D. Pa. 1994); In re BankEast Corp., 132 B.R. 665 (Bankr. D.N.H. 1991)).

This case is fully administered, by any definition of that term. The Liquidation Plan was confirmed on August 17, 2005; all distributions under the Liquidation Plan have been made; all property transfers have occurred and the debtors have been wound down; and all plan payments have been made. Finally, there are no motions pending in this case other than this motion for reconsideration which this decision addresses. The Motion for Final Decree was therefore properly granted in this case.

---

[3] Substantial consummation means 1) the transfer of all or substantially all of the property proposed by the plan or reorganization to be transferred; 2) assumption by the debtor or its successor under the plan of the business or management of substantially all of the property dealt with in the plan; and 3) commencement of distribution under the plan. 11 U.S.C. § 1101(2).

## **CONCLUSION**

For the reasons stated above, the Second Motion to Reconsider is denied. A separate order will be issued.



**Dated: Brooklyn, New York**
**August 30, 2018**

**Carla E. Craig**
**United States Bankruptcy Judge**